## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**TANIA SANCHEZ,**

        **Plaintiff,**

**v.**                                      **Case No:   6:17-cv-1752-Orl-22LRH**

**M&F, LLC, MAFA USA, INC., FABIAN
BERRU and MARIA PAREDES,**

        **Defendants.**

_____

### ORDER AND REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

        This cause came on for consideration without oral argument on the following motions filed

herein:

| |
|---|
| **MOTION:**    **PLAINTIFF'S OPPOSED MOTION TO STRIKE DEFENDANTS' UNTIMELY OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS AND MEMORANDUM OF LAW (Doc. No. 82)**<br><br>**FILED:**    **December 20, 2019**<br><br>_____<br><br>**THEREON** it is **ORDERED** that the motion is **DENIED**. |

| |
|---|
| **MOTION:**    **PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS AND MEMORANDUM OF LAW (Doc. No. 79)**<br><br>**FILED:**    **December 3, 2019**<br><br>_____<br><br>**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**. |

## I.      BACKGROUND

What should have been a relatively straight-forward lawsuit between a Plaintiff and her former employers for unpaid minimum and overtime wages under the Fair Labor Standards Act turned into protracted, and particularly contentious, litigation between opposing counsel who are clearly not fond of each other.  The case culminated in the entry of judgment in favor of the Plaintiff, and the filing of the present motions to strike and for attorney's fees and costs.  An understanding of the course of the litigation is necessary to place the present motions in context.

On October 10, 2017, Plaintiff Tania Sanchez filed suit against her former employers, Defendants M&F, LLC ("M&F"), MAFA USA, Inc. ("MAFA"), Fabian Berru, and Maria Paredes, alleging six claims for relief:   (1) violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") (Count I); (2) violations of the minimum wage provisions of the FLSA (Count II); (3) a state law claim for breach of contract (Count III); (4) a claim of IRS fraud under 26 U.S.C. § 7434 (Count IV); (5) a claim for retaliation under the Florida Whistleblower Act, Fla. Stat. § 448.102 (Count V);[1] and (6) a claim of misappropriation of likeness under Fla. Stat. § 540.08 (Count VI).   (Doc. 1).   Just over three months later, on January 24, 2018, United States District Judge Anne C. Conway declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) and *sua sponte* dismissed the three state law claims without prejudice.   (Doc. 17).

Between January 2018 and September 2019, the parties litigated the three remaining federal claims, with extensive discovery and motions practice.   For example, Ms. Sanchez filed responses and amended responses to the Court's FLSA Interrogatories (Docs. 19, 22); the parties conducted

---

[1] Although Count V also mentions "FLSA discrimination," (Doc. 1, at 10), there were no facts alleged in the complaint to support such a claim, and it does not appear that Ms. Sanchez ever pursued a claim of FLSA discrimination throughout this litigation.  *See, e.g.*, Doc. 41 (motion for summary judgment) and Doc. 79 (motion for attorney's fees and costs) (both of which discuss only FLSA claims for unpaid overtime and minimum wages, and a claim under 26 U.S.C. § 7434).

several depositions; Ms. Sanchez, Fabian Berru, and Maria Paredes each filed several declarations and affidavits; and the parties exchanged written discovery.   The vast majority of the discovery related solely to Ms. Sanchez's FLSA claims.    In addition, on October 9, 2018, the Defendants filed a "Verified Motion for Summary Judgment," which focused almost entirely on the FLSA overtime claim, and only devoted one sentence to the claim of IRS fraud.   (Doc. 33).   Ms. Sanchez filed a timely response in opposition (Doc. 34), and Judge Conway denied the Defendants' motion in its entirety on January 3, 2019.   (Docs. 37-38).

A second motion for summary judgment was filed on May 13, 2019, this time by Ms. Sanchez, who supported her motion with written discovery, affidavits, and depositions.   (Docs. 41, 41-1 through 41-16).   The Defendants opposed the motion, (Doc. 47), and Ms. Sanchez filed a reply, which was also supported with a deposition and other evidence.   (Docs. 50, 50-1 through 50-11).   Again, the focus of the summary judgment motion papers was Ms. Sanchez's two FLSA claims.   Of the 24-page motion, Ms. Sanchez only devoted 3 pages to discussing the IRS fraud claim, and the Defendants did not address that claim at all in their response.

While the summary judgment motion was still pending, Judge Conway issued an Order to Show Cause to Ms. Sanchez why the IRS fraud claim (Count IV) should not be dismissed for lack of jurisdiction.   (Doc. 53).   Judge Conway also directed the Defendants to show cause why they should not be considered joint employers and jointly and severally liable to Ms. Sanchez in the event they were found liable for the alleged FLSA violations in Counts I and II.   (*Id.*).   Both the Defendants and Ms. Sanchez filed timely responses to the Order to Show Cause (Docs. 57-58), and on August 27, 2019, Judge Conway issued an order dismissing Ms. Sanchez's claim for IRS fraud under 26 U.S.C. § 7434 for want of jurisdiction.   (Doc. 59).   Judge Conway also held that Defendants M&F and MAFA "were joint employers within the meaning of the FLSA, 29 C.F.R. §

791.2(a)," and that Fabian Berru and Maria Paredes were also Ms. Sanchez's "employers" within the meaning of the FLSA and would be held jointly and severally liable for any FLSA violations. (*Id.*, at 16).

Thus, since August 27, 2019, the only remaining claims in this case were alleged violations of the FLSA's overtime and minimum wage provisions (Counts I and II).   The parties prepared and filed a joint pretrial statement as to these claims on September 13, 2019 (Doc. 62), and Ms. Sanchez filed several pretrial motions, including three motions in limine.   (Docs. 64-66).   On September 19, 2019, Judge Conway set this case for trial to commence on December 3, 2019.   (Doc. 67).

Eleven days later, on September 30, 2019, the Defendants filed a notice of offer and acceptance of judgment, in which Defendants M&F and Fabian Berru tendered an offer to Ms. Sanchez of $7,000.00, and Defendants MAFA and Maria Paredes tendered an offer of $3,000.00. (Doc. 68).   Ms. Sanchez accepted both offers.   Because the Offers of Judgment purported to settle FLSA claims, I ordered the parties to file a joint notice explaining why their settlement was fair and reasonable, as well as whether the settlement included attorney's fees and costs.   (Doc. 69).   While the parties were able to agree that the settlement was reasonable, they were not able to agree on the question of whether the settlement included attorney's fees and costs, and therefore both sides provided separate briefing on this issue.   (Docs. 73, 74).

On November 13, 2019, I issued a Report recommending that the parties' settlement be deemed fair and reasonable, that the settlement was exclusive of attorney's fees and costs, and that Ms. Sanchez be permitted to file a separate motion for fees and costs.   (Doc. 75).   On November 19, 2019, Judge Conway adopted that Report and found the Offers of Judgment to be a fair and reasonable compromise of a bona fide FLSA dispute.   (Doc. 77).   Judge Conway further held that Ms. Sanchez "is entitled to an award of reasonable attorney fees and costs under the FLSA, 29

U.S.C. § 216(b)," and permitted Ms. Sanchez to file a motion for attorney's fees and costs within fourteen days.   (*Id.*, at 2).

Ms. Sanchez filed her motion for attorney's fees and costs on December 3, 2019.   (Doc. 79).   She seeks a total of $80,775.00 in fees, and an additional $6,637.64 in costs.   (*Id.*).   The Defendants filed an untimely response in opposition on December 19, 2019, in which they assert various arguments challenging the number of attorney hours for which Ms. Sanchez seeks payment and attempt to imbed a "counter request for fees."   (Doc. 81).   The Defendants, however, do not challenge the hourly rates for the attorney and paralegal work performed, nor do they challenge any of Ms. Sanchez's listed costs.   The motion for attorney's fees and costs is ripe for review and has been referred to me for the issuance of a report and recommendation.

Ms. Sanchez has moved to strike the Defendants' opposition as untimely, which the Defendants oppose.   (Docs. 82-83).   The motion to strike has also been referred to me and is ripe for disposition.

Upon due consideration, and for the reasons set forth below, I will deny the motion to strike, and will respectfully recommend that Ms. Sanchez's motion for attorney's fees and costs be granted in part and denied in part.

## II.    THE MOTION TO STRIKE

Ms. Sanchez filed her motion for attorney's fees and costs on December 3, 2019.   (Doc. 79).   Pursuant to Local Rule 3.01(b), any response in opposition was due 14 days later – December 17, 2019.[2]   The Defendants did not file their opposition until December 19, 2019, two days after

---

[2]   Pursuant to Rule 6(a)(1) of the Federal Rules of Civil Procedure, when a specified period of time is stated in days or a longer unit of time, the day of the event that triggers the period is excluded, and every day, including intermediate Saturdays and Sundays, are included.   Fed. R. Civ. P. 6(a)(1)(A), (B).   Therefore, in this case, the first day of the 14-day period was December 4, 2019 (the day after the motion was filed), and the 14-day period ended on December 17, 2019 (both

the deadline to respond had expired.   (Doc. 81).   The Defendants have never sought leave to late-file their opposition.[3]

While Ms. Sanchez is therefore correct that the Defendants' opposition brief is untimely, I do not believe striking the response is appropriate.   The delay in filing was minimal – two days – and Ms. Sanchez has not alleged or even suggested that she has suffered any prejudice from the delay.   Moreover, the granting of Ms. Sanchez's motion would merely encourage the Defendants to file additional motions and/or appeals on this point, and only further prolong what has been, in my opinion, an unnecessarily contentious litigation process.[4]   Accordingly, Ms. Sanchez's motion to strike the Defendant's opposition (Doc. 82) is **DENIED**.

---

December 4th and December 17th are included in the 14-day period).

[3] The Defendants argue Ms. Sanchez filed her motion at 6:38 p.m. on December 3, 2019, after the Defendants' counsel closed his office for the day, and therefore they did not receive service of Ms. Sanchez's motion until December 4, 2019 when counsel checked his email.   (Doc. 83, at 3-4).   As such, the Defendants argue that the calculation of the 14-day period should have begun the day after that event (December 5, 2019).   (*Id.*).   This argument is both legally and logically wrong.   First, Rule 5(b) provides that service of a written motion may be made by "sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing – *in either of which events service is complete upon filing or sending*, but it is not effective if the filer or sender learns that it did not reach the person to be served."   Fed. R. Civ. P. 5(b)(2)(E) (emphasis added).   There is no dispute that Ms. Sanchez filed her motion with the Court's electronic docketing system on December 3, 2019, nor is there any dispute that the email successfully reached the Defendants' attorney that same day.   Therefore, service was complete at that time, regardless of when the Defendants' counsel checked his email.   Second, even assuming the Defendants are correct, this would still render their opposition untimely, as 14 days from December 4, 2019 would be December 18, 2019 – the day *before* the Defendants filed their response.

[4] For example, the Defendants' counsel also argues in its response to the motion to strike that it should be allowed to skirt the rules because Ms. Sanchez's motion for attorney's fees and costs exceeded the 20-page limit without prior leave of Court.   (Doc. 83, at 1, 4).   Unfortunately, the Defendants' counsel once again misreads the rules.   The 20-page limit applies only to opposition briefs, *see* Local Rule 3.01(b).   Motions are afforded a 25-page limit, *see* Local Rule 3.01(a), with which Ms. Sanchez has complied.

### III.   THE MOTION FOR ATTORNEY'S FEES AND COSTS

#### A.   The Applicable Law

Ms. Sanchez seeks an award of attorney's fees and costs pursuant to the FLSA, which provides that the court shall, in addition to any judgment awarded to a plaintiff, allow "a reasonable attorney's fee to be paid by the defendant, and costs of the action."   29 U.S.C. § 216(b).   Judge Conway has held that the Offers of Judgment are fair and reasonable, and that Ms. Sanchez is entitled to an award of reasonable fees and costs under the FLSA.   (Doc. 77, ¶¶ 3-4).   Judge Conway's order is the law of the case; therefore, the question of entitlement to fees has been conclusively determined in Ms. Sanchez's favor, and the only remaining issue is the amount to be awarded.

To determine a reasonable attorney's fee under the FLSA, courts utilize the federal lodestar approach.   *See Perez v. Carey Int'l, Inc.*, 373 F. App'x 907, 911 (11th Cir. 2010) (noting that the district court properly conducted a lodestar analysis in determining a reasonable fee under the FLSA);[5] *Payne v. River Rocks, LLC*, Case No. 6:15-cv-1727-Orl-40DCI, 2017 WL 976634 at *3 (M.D. Fla. Feb. 22, 2017) (citation omitted) ("The Court uses the familiar 'lodestar' method in determining a reasonable fee award [under the FLSA]."), *report and recommendation adopted*, 2017 WL 960734 (M.D. Fla. Mar. 13, 2017).   "The starting point in fashioning an award of attorney's fees is to multiply hours reasonably expended by a reasonable hourly rate."   *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Echerhart*, 461 U.S. 424, 433 (1983).   In applying the lodestar analysis, the party seeking fees has the burden of establishing that the hourly rate and hours expended are reasonable.   *See Norman v. Housing Auth. of the City of*

---

[5] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority.   *See* 11th Cir. R. 36-2.

*Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).   The fee applicant must produce satisfactory evidence that the requested rate is within the prevailing market rates and support the number of hours worked and the rate sought.   *See, e.g.*, *Hensley*, 461 U.S. at 433.   In addition, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."   *Norman*, 836 F.2d at 1303.   Moreover, fee applicants must provide "fairly definite information" concerning activities performed by each attorney.   *See Mallory v. Harkness*, 923 F. Supp. 1546, 1556 (S.D. Fla. 1996) (quoting *FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7th Cir. 1990)).

B.    The Requested Hourly Rates

Under the lodestar method, a reasonable hourly rate for an attorney is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."   *Norman*, 836 F.2d at 1299.   *See also Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996).   The "relevant market" is "the place where the case is filed." *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Georgia Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).   To establish that the requested hourly rate is consistent with the prevailing market rate, the fee applicant must "produc[e] satisfactory evidence" that "speak[s] to rates actually billed and paid in similar lawsuits."   *Norman*, 836 F.2d at 1299.   This requires "more than the affidavit of the attorney performing the work," and generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates.   *Id.*   In addition, the Court may consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[6] and it may rely on its

---

[6]   In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the

own knowledge and experience of the prevailing market rate.  *See Norman*, 836 F.2d at 1299-1300, 1303.

Ms. Sanchez was represented in this case by her attorney Daniel Perez.   Mr. Perez requests an hourly rate of $375.00, and also seeks legal fees for his paralegal, Beauvais Rene, Jr. at an hourly rate of $150.00.   (Doc. 79, at 6).   In support of these hourly rates, Ms. Sanchez has submitted an affidavit from Mr. Perez, (Doc. 79-1), his curriculum vitae (Doc. 79-4), orders from other cases in various jurisdictions where Mr. Perez received similar hourly rates (Docs. 79-5 through 79-9), and an affidavit from Beauvais Rene, Jr.   (Doc. 79-13).   Ms. Sanchez has also submitted an affidavit from a fees and costs expert, Adrienne E. Trent, Esq., an employment attorney within the Orlando Division who has been practicing law for over 24 years, and who is familiar with the hourly rates charged by attorneys in similar FLSA cases.   (Doc. 80-1).

1.      *Daniel Perez's Hourly Rate*

Mr. Perez has been a practicing attorney for nearly twenty years (he graduated from law school in June 2000), and has worked for multiple law firms specializing in labor and employment

---

Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Johnson* was abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989).   However, the *Johnson* factors remain viable in assessing a reasonably hourly rate in calculating attorney's fees.   *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) ("Although its balancing test has since been displaced by the lodestar formula, we have expressed our approval of district courts considering the *Johnson* factors in establishing a reasonable hourly rate." (citing *Norman*, 836 F.2d at 1299)).

The *Johnson* factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.   *Johnson*, 488 F.2d at 717-19.

issues, including the FLSA.   (Doc. 79-1, ¶¶ 3-4, 12-15).   He has been a member in good standing of the Florida Bar since November 2000 and is a member in good standing of the Middle District of Florida Bar, as well as numerous other federal jurisdictions.   (*Id.*, ¶ 16).   Mr. Perez is also an active member of the Florida Chapter of the National Employment Lawyers Association ("FLNELA"), and has served as FLNELA's vice president of programming, president elect, and is the current president.   (*Id.*, ¶¶ 17-21).   He has litigated numerous labor and employment cases, and has won several cases, including appeals before the Eleventh Circuit Court of Appeals.   (Doc. 79, at 11-12). In short, Mr. Perez is an experienced and skilled labor and employment lawyer.

Mr. Perez seeks an hourly rate of $375.00.   He contends that such a rate is reasonable because:   (1) he has extensive skill and experience in labor and employment and FLSA legal issues; (2) this case was heavily litigated, with Mr. Perez taking the lead in preparing and submitting all joint filings; (3) this case presented several novel and difficult questions of law and fact; (4) his extensive work required on this case precluded him from taking on other clients at various points in time; and (5) he obtained a favorable judgment for his client (over 75% of the claimed total unpaid overtime and minimum wages).   (Doc. 79).   Attorney Perez further contends that an hourly rate of $375.00 is customary in the Central Florida legal community for an attorney with similar experience.[7]   (*Id.*, at 13).   In addition, the fees and costs expert, Attorney Adrienne E. Trent, has opined that Mr. Perez's requested rate of $375.00 is reasonable and customary for an attorney of similar experience in the Central Florida legal market, and that in her opinion, a reasonable range for Mr. Perez's fee in this case would be $325.00 to $400.00 per hour.   (Doc. 80-1, ¶¶ 11, 19, 21). The Defendants have not challenged Attorney Perez's requested hourly rate.

---

[7] Attorney Perez also cites to five orders in other cases where he received attorney's fees at hourly rates ranging from $255.00 to $450.00.   (Docs. 79-5 through 79-9).   I note that the cases where Attorney Perez received an hourly rate below $300.00 were litigated in 2008 and 2014.

Considering my knowledge of the prevailing market rates in the Orlando legal community, as well as the specifics of this case, including the Defendants' lack of opposition, I believe that a reasonable hourly rate for Mr. Perez is $375.00.   *See Norman*, 836 F.2d at 1303 (the court is itself an expert on the question of reasonableness and propriety of attorney's fees (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))).   Although, in my experience, counsel's requested rate is on the high side, taking into consideration his lengthy experience in employment law and FLSA issues, the extensive discovery and motions practice in this case, the fact that the parties did not settle until two months before trial was set to commence, and the lack of any opposition, the requested rate is not unreasonable.   Accordingly, I will recommend that Mr. Perez be awarded an hourly rate of $375.00.   *See Rizzo-Alderson v. Tawfik*, No. 5:17-cv-312-Oc-37PRL, 2019 WL 3324298, at *3 (M.D. Fla. July 1, 2019) ("[C]ourts in the Middle District have awarded rates between $250 and $375 per hour in FLSA cases.") (collecting authority).

2.    *Beauvais Rene, Jr.'s Hourly Rate*

Ms. Sanchez is also seeking an hourly rate of $150.00 for the paralegal services of Beauvais Rene, Jr. in this action.   (Doc. 79, at 6).   In his affidavit, Mr. Rene avers that he has an Associate's Degree in Paralegal Studies and has been working as a paralegal for approximately 10 years, almost exclusively concentrating in the areas of labor and employment law.   (Doc. 79-13, ¶¶ 6-12).   Mr. Rene further avers that an hourly rate of $150.00 is reasonable in the Central Florida market for a paralegal of similar experience.   (*Id.*, ¶ 17).   Moreover, the fees and costs expert, Ms. Trent, has opined that a rate of $150.00 per hour is "reasonable" for paralegal services in the relevant legal community, and that a reasonable range for paralegal services in this market is $150.00 to $200.00 per hour.   (Doc. 80-1, ¶¶ 19, 21).   Again, the Defendants voice no opposition to this requested rate.

Based on my experience, I find that the requested hourly rate for Mr. Rene, while again on the somewhat higher end, is a reasonable and customary rate for paralegal services, particularly in light of the lack of opposition from the Defendants.   Accordingly, I will recommend that Mr. Rene be awarded an hourly rate of $150.00.   *See, e.g.*, *Rabco Corp. v. Steele Plaza, LLC*, Case No. 6:16-cv-1858-Orl-40LRH, 2019 WL 5188601, at *8 (M.D. Fla. Jul. 29, 2019), *report and recommendation adopted*, 2019 WL 5176284 (M.D. Fla. Aug. 13, 2019) (awarding rate of $150.00 per hour for paralegal where no one opposed the requested rate); *Central Florida Sterilization, LLC v. Synergy Health AST, LLC,* Case No. 6:15-cv-2120-Orl-31TBS, 2017 WL 4465744, at *4 (M.D. Fla. Sept. 20, 2017), *report and recommendation adopted*, 2017 WL 4423608 (M.D. Fla. Oct. 5, 2017) (awarding rate of $175.00 per hour for paralegal services where the opposing party voiced no objection to the rate charged).

For the foregoing reasons, I recommend that the hourly rates of Ms. Sanchez's counsel, Mr. Perez, and paralegal, Mr. Rene, be set at $375.00 and $150.00, respectively.

<u>C.</u>      <u>The Requested Billable Hours</u>

The second half of the lodestar analysis requires the court to calculate the number of hours reasonably expended on the litigation.   Counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary."   *Hensley*, 461 U.S. at 434. In demonstrating that the requested hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so the district court can assess the time claimed for each activity."   *Norman*, 836 F.2d at 1303.   Likewise, a party opposing a fee application should submit objections and proof that are specific and reasonably precise.   *Barnes*, 168 F.3d at 428 (citing *Norman*, 836 F.2d at 1301).   A fee opponent's failure to explain with

specificity the particular hours he or she views as "excessive, redundant, or otherwise unnecessary" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (internal quotation marks omitted). When a court finds the number of hours billed to be unreasonably high, a court has two choices: it may review each entry and deduct the unreasonable time, or it may reduce the number of hours by an across-the-board cut. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

Ms. Sanchez is seeking recovery of 206.04 hours of attorney time for Mr. Perez, and 22.50 hours of paralegal time for Mr. Rene. (Doc. 79, at 6). In support of these requested hours, Ms. Sanchez again refers to the affidavits of Mr. Perez and Mr. Rene, and has attached the time records for this case. (Docs. 79-1, 79-10, 79-13). In addition, the fee expert, Ms. Trent, has opined that "all of the tasks undertaken by Plaintiff's counsel, as reflected in Plaintiff's counsel's time records, were reasonably necessary for the representation of the Plaintiff and for Plaintiff to prevail in this case." (Doc. 80-1, ¶ 23). Ms. Trent further opined that "the amount of time expended by Plaintiff's counsel in the representation of Plaintiff was reasonable and necessary both on the whole and with respect to the amount of time spent on any particular task undertaken." (*Id.*, ¶ 24).

In contrast to the hourly rates, the Defendants raise several challenges to the number of requested hours, many of which are without any evidentiary or legal support. Specifically, the Defendants argue that the requested hours are excessive because: (1) Ms. Sanchez only prevailed on two of the six claims originally asserted (*i.e.*, 70% of her case was dismissed), and therefore her requested hours and fees should be reduced across the board by 70% (Doc. 81, at 3-4, 8-9); (2) the

Defendants were the prevailing parties on the state law claims by virtue of Judge Conway's dismissal without prejudice of these claims, and therefore the Defendants are entitled to an award of fees for the defense of these claims or, at minimum, a set off for any fees awarded to Ms. Sanchez (*Id.*, at 4); (3) Ms. Sanchez's minimum wage and overtime claims were without merit and not supported by the payroll and IRS records (*Id.*, at 5-6); (4) Ms. Sanchez entered into a contingency fee agreement with Mr. Perez which capped his recovery at 40% of all recovered amounts, and therefore attorney's fees should not exceed $4,000.00 (40% of the $10,000.00 Offers of Judgment) (*Id.*, at 7); (5) Ms. Sanchez is seeking recovery of 48.6 hours "incurred in seeking attorneys' fees" which is not recoverable (*Id.*); (6) Ms. Sanchez is also seeking recovery of 9.9 hours of pre-litigation fees which is not recoverable (*Id.*); (7) because Ms. Sanchez insisted on pursuing multiple claims, the Defendants were unable to make any offer of judgment under Rule 68 of the Federal Rules of Civil Procedure until only the FLSA claims remained (*Id.*, at 8); (8) the fees requested are unreasonably high and "ludicrous" based on Ms. Sanchez's acceptance of the $10,000.00 Offers of Judgment (*Id.*, at 10); and (9) the hours requested are excessive, redundant, abusive, and unnecessary (*Id.*, at 10-11).   In support of this litany of arguments, the Defendants attach Ms. Sanchez's 2016 and 2017 W-2 forms, and the affidavit of their attorney, Luis A. Gonzalez.   (Docs. 81-1, 81-2).

### 1.    *The Impact of the State Law Claims and the IRS Fraud Claim*

The Defendants' first two arguments focus on the dismissal of four of Ms. Sanchez's claims (the three state law claims and the IRS fraud claim).   According to the Defendants, Ms. Sanchez should not be allowed to recover any fees for her litigation of these claims as she is not the prevailing party.   Rather, the Defendants contend that *they* are the prevailing parties on the state law claims and, as such, should either be awarded their attorney's fees for the defense of those claims, or

alternatively, their incurred fees should be used as a set off against the fees Ms. Sanchez now seeks.[8] This argument, while creative, is not legally supportable and is contrary to the facts of this case.

First, while the Defendants are correct that Ms. Sanchez is the prevailing party only as to the two FLSA claims, the Defendants ignore the fact that Ms. Sanchez has already reduced her requested hours to account for any attorney time spent litigating the dismissed claims. According to her motion, her attorney Mr. Perez originally requested 217.10 hours of attorney time, but has subtracted 10.7 hours to account for the time spent on the four dismissed claims. (Doc. 79, at 3, 6; Doc. 79-1, ¶¶ 40-41). Specifically, Mr. Perez subtracted 2.7 hours of attorney time to account for the drafting of the state law counts and review of Judge Conway's January 24, 2018 Order. (Doc. 79, at 3). As previously mentioned, the state law claims were dismissed just over 3 months after the case was filed, and there is nothing in the case docket suggesting that Ms. Sanchez's attorney spent any additional time litigating these claims prior to their dismissal. I have also reviewed the submitted time records, and do not see any additional hours that would be attributable to the state law claims. I therefore find that the reduction of 2.7 hours was appropriate, and that no further reduction to account for the dismissal of these state law claims is warranted.[9]

With respect to the IRS fraud claim, Mr. Perez has subtracted 8.0 hours of his time to account for his work on that claim. Judge Conway did not dismiss the IRS fraud claim until August 27, 2019, some twenty-two (22) months into this litigation, (Doc. 59), thus at first blush it would appear

---

[8] The Defendants do not assert this entitlement to fees and/or set off argument with respect to the IRS fraud claim.

[9] I note that the Defendants' attorney, Mr. Gonzalez, avers in his affidavit that he spent a total of 9.8 hours over a three-day period researching the state law claims prior to their dismissal. However, as Mr. Gonzalez himself admits, he spent such an extensive period of time conducting this research because he was not familiar with at least two of the claims. (Doc. 81-2, at ¶¶ 2-3). I therefore do not find the fact that Mr. Gonzalez spent approximately four times as much time on the state law claims as Mr. Perez did to be relevant or persuasive.

that a reduction of only 8.0 hours is low.[10]   However, Ms. Sanchez argues in her motion that the

"thrust of this litigation were Counts I and II for unpaid overtime and unpaid minimum wages under

the FLSA."  (Doc. 79, at 3; *see also* Doc. 79-1, ¶ 41).   Because the IRS fraud claim was not the

focus of this case, but rather, for lack of a better phrase, a "side claim" that was related to the FLSA

claim, Ms. Sanchez argues that an 8.0-hour reduction is sufficient.   I agree.

In reviewing the docket in this case, it is apparent that the vast majority of the discovery and

motions practice centered around Ms. Sanchez's FLSA claims.   (*See, e.g.*, Docs. 21-22, 24, 26, 29,

33-34, 37-38, 41, 47, 50).   For example, the Defendants gave this claim such short shrift as to only

include a one sentence argument in their motion for summary judgment.  (Doc. 33).   And Ms.

Sanchez only devoted three pages of her 24-page summary judgment motion to this claim.   (Doc.

41).   Indeed, the Defendants did not even address the IRS fraud claim in their opposition brief.

(Doc. 47).   It is also clear that the evidence relevant to the IRS fraud claim (mainly the tax returns

for the Defendants for Ms. Sanchez, as well as their respective deposition testimony) was the same

evidence and testimony utilized in litigating the FLSA claims.   Based on these facts, and utilizing

my own experience, I therefore find that the reduction of 8.0 hours of attorney time is appropriate,

and that no further reductions are necessary to account for the IRS fraud claim.   *See, e.g.*, *George*

*v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1296 (M.D. Fla. 2000) (reducing fee award by 5%

to account for attorney time spent litigating unsuccessful, but related, claims).

For these same reasons, I further reject the Defendants' argument for an across-the-board

70% reduction in Ms. Sanchez's requested attorney hours and fees.   Having reviewed the time

---

[10] Ms. Sanchez explains that she reached the 8.0-hour amount by taking the total of attorney hours expended through August 27, 2019 (146.80 hours) and reducing that amount by 5% (7.34) and then rounding up to 8.0 hours.   (Doc. 79, at 3-4).

records, it is clear the hours listed (less the total of 10.7 hours subtracted) all relate to the FLSA claims, on which Ms. Sanchez is the prevailing party.

Lastly, I find the Defendants' argument that they are the prevailing parties as to the state law claims, and therefore entitled to an award of fees or, at minimum, a set off against Ms. Sanchez's fees, to be unpersuasive and not legally supportable.   Florida law defines a prevailing party as one who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Moritz v. Hoyt Enters., Inc.*, 604 So. 2d 807, 810 (Fla. 1992) ("[T]he fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court") (adopting as Florida law the federal standard for prevailing party status set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).   This standard, applicable to federal and Florida law, looks for "(1) a situation where a party has been awarded by the court at least some relief on the merits of his claim, or (2) a judicial *imprimatur* on the change in the legal relationship between the parties."  *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 905 (11th Cir. 2003) (internal quotation marks omitted) (quoting *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 604–05 (2001)).

Here, Judge Conway *sua sponte* declined to exercise supplemental jurisdiction over the state law claims, dismissed them without prejudice, and tolled the applicable statutes of limitations for 30 days, thereby allowing Ms. Sanchez the opportunity to refile these same claims in state court. (Doc. 17).  Judge Conway did not rule on the merits of the claims.  Thus, while the claims no longer were viable in this Court, the Defendants did not prevail on the overall litigation of these claims as Ms. Sanchez was free to refile them in state court.   Accordingly, the legal relationship between the parties has not been altered, and the Defendants are not prevailing parties entitled to

recover attorney's fees. *See Interim Healthcare Inc. v Suncoast Loving Care, LLC*, No. 18-60766-CIV-GAYLES/SELZER, 2018 WL 6620314, at \*2-3 (S.D. Fla. Nov. 28, 2018) (finding that defendants were not "prevailing parties" entitled to attorney's fees where breach of contract action was dismissed without prejudice).[11]

The Defendants' argument has one additional fatal flaw. Even if they were held to be prevailing parties as to the state law claims, those claims were dismissed on January 24, 2018, and Judgment was entered as to all claims on November 20, 2019. (Docs. 17, 78). The Defendants never moved for recovery of any attorney's fees for their defense of those claims, and the time to do so has long expired. *See* Fed. R. Civ. P. 54(d)(2)(B) ("Unless a statute or court order provides otherwise, the motion [for attorney's fees] must . . . be filed no later than 14 days after the entry of judgment.").[12] The Defendants also cannot imbed such a request for relief in their opposition brief. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *Fed. Deposit Ins. Corp. v. Paleja*, No. 6:13-cv-1097-Orl-22TBS, 2014 WL 12617786, at \*4 (M.D. Fla. June 26, 2014). Similarly, the Defendants cannot evade this flaw by couching their request for fees as instead a request for a set-off.

For these reasons, I will respectfully recommend that the Defendants' first two arguments be rejected.

---

[11] I note that the Florida Whistleblower Act contains a "fee-shifting" provision. *See* Fla. Stat. § 448.104 ("A court may award reasonable attorney's fees, court costs, and expenses to the prevailing party."). I have been unable to locate any legal authority that would suggest that Florida's definition of "prevailing party" discussed above would not apply equally to the Florida Whistleblower Act. And the Defendants also have not pointed to any relevant authority on this point. Further, the statutory provision governing "Unauthorized Publication of Name or Likeness" does not appear to have a fee-shifting provision. *See* Fla. Stat. § 540.08.

[12] In case the Defendants are relying upon Judge Conway's November 19, 2019 Order, that Order only authorized Ms. Sanchez to file a motion for fees and costs. (Doc. 77, at 2). In any event, the Defendants missed that deadline as well.

2. *The Defendants Cannot Relitigate the Merits of the FLSA Claims*

The Defendants' third argument is nothing more than an attempt to relitigate the merits of Ms. Sanchez's FLSA minimum wage and overtime wage claims. (Doc. 81, at 5). As previously mentioned, the law of the case has been set – the Defendants voluntarily chose to settle the FLSA claims, and Ms. Sanchez has been held to be the prevailing party. (*See* Docs. 75, 77). Therefore, any attempts to relitigate the merits of those claims at this late juncture will not be given further consideration.[13] I further note that, contrary to the Defendants' contentions, the question of whether Ms. Sanchez was entitled to unpaid overtime and/or minimum wages was hotly contested, and the accuracy of the records the Defendants' point to was previously called into question by the Court. (Doc. 37, at 10, n.14).

3. *The Contingency Fee Agreement*

Next, the Defendants argue, without any legal support, that any attorney's fees awarded should be limited by the 40% contingency fee agreement between Ms. Sanchez and her attorney. According to the Defendants, since Ms. Sanchez settled her FLSA claims for $10,000.00, the maximum award of fees should therefore be $4,000.00. (Doc. 81, at 7).

Numerous courts have held that contingency fee agreements do not impose a ceiling on an otherwise reasonable award of attorney's fees – both in FLSA and other cases. *See, e.g.*, *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir. 1984) (concluding that "a § 216(b) fee award should not be limited by a contingent fee agreement and that the standards established by *Hensley* apply regardless of fee arrangements"); *Lora v. J. V. Car Wash, LTC.*, No. 11 CIV. 9010 LLS AJP, 2015

---

[13] There is no indication that the Defendants moved for reconsideration of any of Judge Conway's orders, or appealed any of her decisions.

WL 4496847, at *6 n.9 (S.D.N.Y. July 24, 2015), *report and recommendation adopted*, 2015 WL 7302755 (S.D.N.Y. Nov. 18, 2015) ("[A] contingency fee agreement does not impose a ceiling on otherwise reasonable attorney's fees in FLSA and other civil rights cases."); *Moore v. Appliance Direct, Inc.*, No. 6:09-cv-224-Orl-GJK, 2013 WL 12336220, at *6 n.12 (M.D. Fla. Oct. 22, 2013) (rejecting argument in FLSA case that attorney's fee award should be reduced based on contingency fee agreement between the plaintiff and his counsel).  *See also Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) (attorney's fees under 42 U.S.C. § 1988 are not limited to the amount provided in a contingency agreement); *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 142 (2d Cir. 2007) (in the context of an age discrimination claim brought under Title VII, "the contingency fee may not serve as a cap on an attorney fee award").[14]

I find these decisions to be persuasive and, in the absence of any authority to the contrary, I further find that the contingency fee agreement between Ms. Sanchez and her attorney, while a factor to consider in assessing reasonableness, does not limit the amount of fees recoverable.  *Cf. Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009) ("FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.  FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions.") (citations omitted).[15]  I will therefore respectfully recommend that the Court reject the Defendants' fourth argument.

_____

[14] Courts in this Circuit that have addressed contingency fee agreements and the reasonableness of an attorney's fee award have also concluded that a reasonable attorney's fee was *lower* than the contingency fee amount and rejected the plaintiff's request to increase the award of fees up to the contingency amount.  *See, e.g.*, *Silva v. Miller*, 547 F. Supp. 2d 1299 (S.D. Fla. 2008). Therefore, the nature of the agreement—whether fixed or contingent—is but one factor in the reasonableness analysis.  *See Blanchard*, 489 U.S. at 96.

[15] I further note that the contingency fee agreement between Ms. Sanchez and Mr. Perez

4.      *Recovery of Fees for Filing the Attorney's Fees Motion and Pre-litigation Fees*

The Defendants fifth and sixth arguments focus on two categories of hours listed on the attorney time records:   48.6 hours incurred in seeking attorney's fees and 9.9 hours of pre-litigation fees.   (Doc. 81, at 7).   The Defendants do not challenge the number of hours allocated to these tasks – *i.e.*, they do not argue that these fees are excessive – rather, they simply argue that they are not recoverable at all.   I disagree.

a.      *Fees for Filing the Attorney's Fees Motion*

Generally, a prevailing plaintiff may recover attorney's fees incurred in establishing her entitlement to fees.   *See Thompson v. Pharm. Corp. of Am., Inc.*, 334 F.3d 1242, 1245 (11th Cir. 2003) (awarding fees for litigating entitlement to fees under 42 U.S.C. § 1988); *see also Butdorf v. SC Maintenance, Inc.*, No. 8:15-cv-916-T-23TGW, 2015 WL 9694516, at *3 (M.D. Fla. Dec. 7, 2015) (noting in an FLSA case that "time preparing this motion for an attorney's fee and costs is compensable"); *Hill v. Chequered Flag Auto Sales, Inc.*, Case No. 6:05-cv-1597-Orl-18KRS, 2007 WL 710139, at *5 (M.D. Fla. Mar. 6, 2007) (awarding fees in an FLSA case for hours worked preparing an attorney's fees motion); *Schwartz v. High Q Seeds Corp.*, No. 05-60728-CIV, 2006 WL 1548385, at *2 n.1 (S.D. Fla. Mar. 13, 2006) (applying *Thompson* in a case brought under the FLSA).   Accordingly, the objection to awarding fees for hours worked preparing the motion for attorney's fees is unavailing.

---

itself states that "[s]hould the amount of attorney's fees obtainable from the Court exceed the 40% contingency fee earned by the Firm, then the Firm is entitled at its discretion to the greater of the 40% contingency fee or the amount obtainable from the Court."   (Docs. 79-2, 79-3).   Thus, by its terms, the contingency fee agreement did not contain any ceiling on the amount of fees awardable and recoverable.   Moreover, judgment has already been entered in Ms. Sanchez's favor in the amount of $10,000, therefore any award of fees will not reduce the amount to which Ms. Sanchez is already due to be compensated.

- 21 -

It also bears noting that the Defendants have miscalculated the number of attorney hours expended on the motion for fees and costs.  The Defendants claim that Ms. Sanchez seeks 48.6 hours "incurred in seeking attorney's fees."   (Doc. 81, at 7).   However, a review of the time records shows that, at most, Mr. Perez expended 23.0 hours preparing and finalizing the present motion, and the paralegal, Mr. Rene, expended an additional .50 hours (primarily addressing the issue of costs). (Doc. 79-10, at 1-5).[16]   A further review also shows that the hours listed are not duplicative, but rather each entry addresses various and separate tasks necessary for the preparation of the motion. Given the length of the motion, the numerous objections raised by the Defendants – each of which Mr. Perez presciently addressed in the present motion – and the need for multiple affidavits and other evidence in support, I find that 23.5 hours of total time, while on the high side, is not unreasonable for the preparation and filing of what has proven to be a strongly contested motion for fees and costs.

It appears that the Defendants are also including the 21.1 hours of time Mr. Perez expended on the question of entitlement to fees.   (Doc. 79-10, at 4-9).[17]   These hours were incurred in response to my Order directing the parties to file a joint motion both explaining why their settlement is fair and reasonable, and addressing whether the settlement included an award of fees and costs. (Doc. 69).   In addressing this issue, the time records show that Mr. Perez attempted to confer and negotiate with the Defendants' attorney, without success.  (Doc. 79-10, at 4-9).   Moreover, the issue of whether the Offers of Judgment included attorney's fees and costs was relatively novel, and

---

[16]  I calculated these hours by adding up all of the time Mr. Perez spent on attorney's fees issues, including the lengthy phone and email conversations he had with counsel for the Defendants, from the date that Judge Conway issued her order stating that Ms. Sanchez is entitled to fees, through the date that the present motion was filed.

[17]  Even adding these two amounts together, I only reach 44.6 hours.   The Defendants have not explained how they calculated 48.6 hours from the submitted time records.

required research by both sides – a fact borne out by my lengthy Report on the issue.   (Docs. 73-75).   Therefore, relying again on my experience, and given that the Defendants do not argue that the hours sought are excessive, I find that the hours expended both on the question of entitlement to fees and costs and on the question of amount are reasonable and will recommend that they be awarded to Ms. Sanchez without further reduction.   *See, e.g.*, *Souryavong v. Lackawanna Cty.*, 159 F. Supp. 3d 514, 539 (M.D. Pa. 2016) (awarding 17 hours for time spent in preparing attorney's fee petition), *aff'd*, 872 F.3d 122 (3d Cir. 2017); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. F. Vicino Drywall II, Inc.*, No. 10-60273-CV, 2011 WL 13214289, at *5 (S.D. Fla. Aug. 22, 2011), *report and recommendation adopted*, 2011 WL 13214290 (S.D. Fla. Sept. 13, 2011) (finding 89.4 hours incurred in litigating issue of entitlement to attorneys' fees reasonable).

> b.      *Pre-Litigation Attorney's Fees*

Next, the Defendants challenge 9.9 hours of attorney time that was incurred prior to the filing of the Complaint (October 11, 2017).   (Doc. 81, at 7).   Again, the Defendants do not argue that these hours are excessive, rather that Ms. Sanchez is simply not entitled to recover anything for pre-litigation attorney work.

As an initial matter, it appears that the Defendants have again miscalculated the total number of pre-litigation hours.   A review of the time records shows that Mr. Perez expended a total of 8.30 hours on this case prior to October 11, 2017.   (Doc. 79-10, at 46-48).   And contrary to the Defendants' contentions, pre-litigation hours are recoverable, so long as they are reasonable and related to the case itself.   *See Barnes*, 168 F.3d at 436 ("Interviews, correspondence, and meetings with a potential plaintiff may yield factual information which will be utilized in pursuing the litigation so that the time billed for those activities can be considered time expended on the litigation.").

A review of the time records discloses that Mr. Perez spent these 8.30 hours meeting with Ms. Sanchez, reviewing her payroll records, drafting a demand letter and attempting to negotiate an early settlement, and drafting the complaint.  (Doc. 79-10, at 46-48).  And of these 8.30 hours, only 1.5 hours was spent drafting the complaint itself.  (*Id.*).[18]  I find these hours to be reasonable, related to the case, and will therefore recommend that they be recoverable.  *See Payne v. River Rocks, LLC*, Case No. 6:15-cv-1727-Orl-40DCI, 2017 WL 976634, at *5 (M.D. Fla. Feb. 22, 2017) (finding three hours "is a reasonable time for researching and drafting the [FLSA] Complaint."), *report and recommendation adopted*, 2017 WL 960734 (M.D. Fla. Mar. 13, 2017); *Hill v. Chequered Flag Auto Sales, Inc.*, Case No. 6:05-cv-1597-Orl-18KRS, 2007 WL 710139, at *3 (M.D. Fla. Mar. 6, 2007) (overruling objection to 4 hours of attorney time spent in an FLSA case interviewing client, reviewing pay and time records, drafting the complaint, and performing records searches); *Celotex Corp. v. Aetna Life Ins. Co.*, Case No. 8:05-cv-1465-T-27TGW, 2007 WL 9723629, *2 (M.D. Fla. Aug. 30, 2007) (awarding fees for 12.8 hours of pre-litigation attorney time).

     5.    *The Offers of Judgment*

The next two arguments the Defendants raise center around the Offers of Judgment.   First, the Defendants appear to claim that the attorney's fees requested are excessive because "[b]y filing the numerous counts the plaintiff was successful in precluding the defendants from availing themselves of the Rule 68 measure of risk-shifting designed to encourage settlements in civil actions.   It was not until the frivolous counts were dismissed, that the defendants were in a position to tender an offer of judgment under Rule 68."  (Doc. 81, at 8).   I interpret this confusing statement

---

[18]  Mr. Perez expended an additional .70 hours finalizing and filing the Complaint and civil cover sheet on October 11, 2017.   (Doc. 79-10, at 44).

as an argument that the fees are excessive only because the Defendants were unable to settle the case (*i.e.*, make an Offer of Judgment), until only the FLSA claims remained.   (*See also* Doc. 81-2, ¶ 6).   The Defendants cite to no legal authority for this creative argument.

I find this argument to be a repeat of the Defendants' prior challenges based on the dismissal of the three state law claims and the IRS fraud claim.   Any hours attributable to those claims have already been subtracted from Ms. Sanchez's fees request, and other than an apparent litigation strategy, the Defendants have not explained why they could not settle the case sooner.   To the contrary, the time records show that Ms. Sanchez's attorney attempted to settle this case before it was ever filed, the parties engaged in mediation twice, and the Defendants vigorously defended their positions, including through the filing of a motion for summary judgment.   Moreover, as previously discussed, it is clear that both sides did not give much consideration to the IRS fraud claim (the only other claim still pending after January 2018) throughout their discovery and motions practice.   This was an FLSA unpaid wages case at bottom, and at any point in time the Defendants could have made an Offer of Judgment but made the strategic decision to wait until after a date certain for trial had been set to do so.   (Docs. 67, 68).   Ms. Sanchez will not be punished by reducing her attorney's fees based on the Defendants' litigation strategy.

The Defendants' second argument in relation to the Offers of Judgment is slightly clearer. The Defendants claim that the requested hours and fees are excessive because they equate to more than eight times the Offers of Judgment.   Thus, the Defendants contend that Ms. Sanchez's success in this case was limited and her attorney's fees should be reduced accordingly.   I disagree.

Ms. Sanchez stated in her responses to the FLSA interrogatories that her estimated unpaid overtime was approximately $8,400, not including liquidated damages.   (Doc. 22-1, at 2).   And regardless of Defendants' assertions to the contrary, the payroll records for this case were

incomplete and inaccurate, thus making it nearly impossible to calculate Ms. Sanchez's precise rate of pay, or her alleged damages.   (*See* Docs. 37, at 10, n.14; Doc. 33, at 11-15, 18).[19]   Nevertheless, in her motion to approve the settlement, Ms. Sanchez attached a 13-page affidavit, in which she painstakingly attempted to decipher the Defendants' payroll and time records, resulting in a calculation that she was owed $3,877.50 in unpaid overtime wages, and $2,555.64 in unpaid minimum wages.  (Doc. 73-1, at 2-12).   When an equal amount of liquidated damages is added, the total that Ms. Sanchez claimed was $12,866.28.   (*Id.*, at 12-13).   Ms. Sanchez received $10,000.00 in settlement, or 77.7% of what she claims she was owed.   This is a very favorable outcome, particularly given how vigorously both sides litigated their respective positions, and not one that would merit a reduction of her attorney hours under the lodestar analysis.[20]

As support for this conclusion, I turn to the Southern District of Alabama, which summarized a similar issue as follows:

> Krystal urges erasure of large swaths of the requested fees because they eclipse Lee's actual damages by a considerable margin.   This disparity between Lee's lodestar fee amount ($22,577.50) and her recovered wages ($1,218.00) is substantial and undeniable, and may properly be considered in evaluating the reasonableness of the fee request. Nonetheless, there is no strict rule of proportionality between fees and damages.   As the Eleventh Circuit opined in an analogous setting, 'Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases . . . to depend on obtaining substantial monetary relief. . . .   A rule of proportionality would make it

---

[19] The Defendants point to Ms. Sanchez's motion for summary judgment, in which she requests an award of unpaid overtime wages in the amount of $8,400 (the same amount listed in her FLSA interrogatory responses), and an award of $9,136.80 in unpaid minimum wages.  (Doc. 81, at 5 (citing Doc. 41, at 2)).   A review of Ms. Sanchez's motion for summary judgment makes clear that she based these amounts in large part on the fact that the Defendants did not keep proper payroll or time records, and therefore her requested amounts were largely assumptions.  (Doc. 41, at 15-17, 21-23).   I do not believe Ms. Sanchez should now be penalized for the Defendants' inadequate record keeping.

[20] I also find it relevant that the Defendants themselves calculated the maximum amount of Ms. Sanchez's unpaid minimum and overtime wages (including liquidated damages) to be $1,890.00.   (Doc. 74, at 2).   Thus, using the Defendants own calculations, Ms. Sanchez's $10,000.00 settlement was "more than 5 times the amount actually owed."   (*Id.*).

difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.' *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1493 (11th Cir. 1994) (citations omitted). Here, the record reflects that Krystal engaged Lee in a war of attrition spanning more than a year from plaintiff's counsel's initial contact in June 2011 until Krystal's tender of a suitable offer of judgment in August 2012. Thus, to the extent that disproportionality exists, it is largely a function of defendant's own litigation practices. *See generally Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 956 (E.D. Wis. 2003) (declining to adjust lodestar amount downward where fees substantially exceeded claim amount, reasoning that defendant 'has only itself to blame for the disproportionality,' in that plaintiff offered reasonable settlement at outset of case but defendant refused, chose to litigate everything, and forced plaintiff's fees to climb, such that plaintiff should not 'be forced to swallow expenses incurred largely as [a] result of the [defendant]'s approach to this litigation')."

*Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1273-74 (S.D. Ala. 2013); *see also James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1347 (S.D. Fla. 2007) (citations omitted) ("[G]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case."). I will therefore recommend that the Defendants' objections based on the Offers of Judgment be rejected.

6.    *The Hours Requested are Excessive, Abusive, and Duplicative*

The Defendants final argument is that the hours sought by Ms. Sanchez are excessive, redundant, abusive, and otherwise unnecessary. (Doc. 80, at 11-12). Specifically, the Defendants point to four instances of allegedly excessive billing. First, the Defendants point to four entries on October 10, 2017, where Ms. Sanchez's attorney spent .10 hours each reviewing four summonses for a total of .40 hours. (*Id.*, at 11; *see also* Doc. 79-10, at 44). According to the Defendants, reviewing summonses "is clerical in nature and should not take more than 30 seconds." (Doc. 81, at 11). Second, the Defendants cite to an entry on December 4, 2017 for .10 hours for reviewing a notice of appearance for the Defendants' attorney and argue that this is equally excessive and "should have taken seconds." (*Id.*; *see also* Doc. 79-10, at 43).

I agree with the Defendants that the time spent by Ms. Sanchez's attorney on reviewing summons and the notice of appearance are clerical in nature and should not be recoverable. *See Espino v. Comm'r of Soc. Sec.*, Case No. 6:14-cv-1185-Orl-TBS, 2015 WL 6705453, *2 (M.D. Fla. Nov. 2, 2015) (clerical tasks such as "Review Summons Issued," "Call to Clerk to confirm Summons were sent to Marshall for service," "Download/Combine and OCR Transcript, live bookmark," and "Download, file and save Corrected transcript in parts," are not compensable as attorney fees); *Peress v. Wand, M.D.*, 597 F. Supp. 2d 1320, 1325-26 (S.D. Fla. 2008) (an attorney in an FLSA case should not be permitted to recover fees for clerical time for e-filing, online research of addresses, preparing civil cover sheets and summonses, and for reviewing the CM/ECF email for documents prepared and filed by counsel).   I will therefore recommend that the attorney hours sought be reduced by a total of .50 hours (for the review of the four summonses and one notice of appearance).

Next, the Defendants challenge a time entry on December 4, 2017 for .20 hours for a phone conference between Mr. Perez and the Defendants' attorney.   Mr. Gonzalez, counsel for the Defendants, states in the opposition brief that he has no record of this phone call.   (Doc. 81, at 11). However, simply having no record of a phone conversation does not mean that the call did not take place, nor does it render the .20 hour time entry excessive, redundant, or unnecessary.   Ms. Sanchez has presented her attorney's time records, which state that the call took place, an affidavit from her attorney, Mr. Perez, and an affidavit from an expert witness, all of which support the hours of attorney time for which she seeks to be compensated.   I will therefore recommend that the Defendants' challenge to this .20 time entry be rejected.

The last time entry the Defendants challenge is a September 14, 2017 phone conference between Ms. Sanchez and her attorney which lasted .20 hours.   (Doc. 81, at 11).   The time entry

states that Mr. Perez "Call[ed] client to let her know that Defendants switched attorneys and to let her know that they picked a poor attorney that is unfamiliar with the Fair Labor Standards Act and to discuss our next steps."  (Doc. 79-10, at 45).  The Defendants do not claim that this time is excessive or redundant, but rather argue that it is "abusive" based solely on Mr. Perez's "questioning defense counsel's qualifications."  (Doc. 81, at 11).  *See also* Affidavit of Mr. Gonzalez, Doc. 81-2, ¶ 9 ("Plaintiff's counsel expects to be compensated $75.00 for the privilege of attacking his opposing counsel's qualifications.").

While I question the necessity of Mr. Perez to include in his billing records negative commentary about his opposing counsel, I do not find, in my experience, that .20 hours for a telephone call between attorney and client to discuss strategy when the opposing party has retained new counsel to be excessive, redundant, unnecessary, or abusive.  I will therefore recommend that the Defendants' challenge to this .20 hour time entry be rejected.

The Defendants contend that there is also other unrecoverable time, but "in order to conduct an accurate assessment of the hours truly invested, the defendants must conduct discovery."  (Doc. 81, at 11).  Therefore, "[f]or the sake of brevity, [the Defendants did not] address all the questionable charges because [their] brief would exceed the 20 page limits."  (*Id.*).  However, it is not the Court's job to sift through 48 pages of time records with over 250 time entries to determine which time is "otherwise unreasonable" that has not already been addressed in one of the many other challenges the Defendants raised.   The Defendants' response is only 12 pages in total – they had an additional eight pages within which to lodge their objections.  Moreover, if they felt they would exceed the 20-page limit, they could have sought a page limitation extension.  They did not. Therefore, to the extent they advance arguments as to a general category of "unrecoverable time," those arguments are not specific and I recommend that they be denied on that basis.  *See Gray*, 125

F.3d at 1389 (a fee opponent's failure to explain with specificity the particular hours he views as unnecessary or duplicative is generally fatal); *Scelta*, 203 F. Supp. 2d at 1333 (same).[21]

In summary, I will respectfully recommend that the total of 206.40 hours of attorney time for Mr. Perez be reduced by an additional .50 hours to a total of 205.90 hours, and that the 22.50 hours of paralegal time for Mr. Rene remain untouched.   Other than these reductions, I find that the hours expended on this case by both Mr. Perez and Mr. Rene are reasonable, particularly given the numerous motions filed, the 25-month duration of this litigation, and the favorable outcome, and that Ms. Sanchez has properly supported her requested attorney and paralegal hours with time records and affidavits.   When these reasonable hours are multiplied by the reasonable hourly rates, the total of fees equates to $77,212.50 for Mr. Perez and $3,375.00 for Mr. Rene, for a recommended grand total of $80,587.50 in fees.

D.    The Requested Costs

Ms. Sanchez also seeks recovery of $6,637.64 in costs.   (Doc. 79, at 4-5).   The Defendants have not raised any challenges to these costs; however, I must still review them to ensure that they are both legally recoverable and reasonable.

The FLSA authorizes the recovery of costs to a prevailing plaintiff.   29 U.S.C. § 216(b). However, "[t]he costs recoverable by prevailing plaintiffs in FLSA cases under section 216(b) are

---

[21] The Defendants also point to a sworn statement by Mr. Perez, filed with the Court on March 30, 2018, in which he states that "[t]o date, counsel has recorded approximately 14.7 hours of attorney time."   (Doc. 24-1).   No time records accompanied this statement.   However, the time records Ms. Sanchez has now submitted show 24.9 hours of attorney time through March 30, 2018. (Doc. 79-10 at 37-48).   Part of these hours include the pre-litigation work which I previously found to be reasonable.   Other than stating this discrepancy, the Defendants have not otherwise shown with any specificity how the attorney hours sought are excessive, unnecessary, or duplicative.   And upon review, I find that the 24.9 hours, which are supported with affidavits, are both reasonable and necessary for the litigation of this case.

limited to those costs enumerated in 28 U.S.C. § 1920." *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1315 (citing *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988)).

The following costs are allowable pursuant to 28 U.S.C. § 1920:

(1)   Fees of the clerk and marshal;

(2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)   Fees and disbursements for printing and witnesses;

(4)   Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)   Docket fees under 28 U.S.C. § 923;

(6)   Compensation of court appointed experts, interpreters, and special interpretation services.

A court cannot award costs other than those specifically authorized in § 1920, unless authorized by another applicable statute. *See U.S. E.E.O.C. v. W&O, Inc.,* 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)).

Ms. Sanchez seeks to recover $400.00 for the filing fee with this Court, and $117.00 in service of process to Fabian Berru, MAFA, USA, and M&F (each service of process was $39.00). (Doc. 79, at 4).[22]   Ms. Sanchez has attached invoices supporting these costs (Doc. 79-11, at 1-4), and they are compensable under 28 U.S.C. § 1920.   *See Ramirez v. Raptor Tech. Grp., Inc.*, Case No. 5:12-cv-100-Oc-34TBS, 2012 WL 1758134, at *4 (M.D. Fla. May 2, 2012) (concluding that service of process and filing fees are compensable under §1920).   *See also Rizzo-Alderson*, 2019 WL 3324298, at *4 (awarding service of process fees in FLSA action so long as the fee does not

---

[22] Ms. Sanchez is not seeking the costs of service of process as to Maria Paredes.

exceed the rate charged by the U.S. Marshals Service, which is currently $65.00 per hour plus expenses) (citing 28 C.F.R. § 0.114(a)).

Ms. Sanchez also seeks to recover $490.00 in court reporter's fees for the depositions of Fabian Berru and Maria Paredes, $425.75 for Mr. Berru's deposition transcript, $524.89 for Ms. Parades' deposition transcript, and $130.00 for an interpreter for the deposition of Ms. Parades. (Doc. 79, at 5).  Ms. Sanchez utilized the deposition transcripts throughout her case and cited to them both heavily in her summary judgment papers.  (*See* Docs. 41, 50).  I therefore find that these deposition transcripts "were necessarily obtained for use in the case," and the transcript and court reporter fees, which are supported by invoices attached to Ms. Sanchez's motion (Doc. 79-12, at 1-8), are both reasonable and recoverable under 28 U.S.C. § 1920(2).

The $130.00 interpreter fee is also recoverable under § 1920.  *See* 28 U.S.C. §1920(6) (authorizing recovery of special interpretation services).  Ms. Sanchez represents in her motion that "interpreter fees are taxable under the statute and Deponent requested and was afforded an interpreter for her deposition."  (Doc. 79, at 17-18).  I reviewed Ms. Parades' deposition, and an interpreter was used throughout questioning.  (Doc. 50-1).  Ms. Sanchez has supported this requested fee with a payment receipt (Doc. 79-12, at 9), and the Defendants pose no objection.  I will therefore recommend that the $130.00 fee for an interpreter is both reasonable and recoverable. *See Rodriguez v. Marble Care Int'l., Inc.*, 862 F. Supp. 2d 1316, 1321 (S.D. Fla. 2012) (allowing recovery of fee for Spanish language interpreter where plaintiff insisted on having an interpreter at the deposition); *Palma v. Safe Hurricane Shutters, Inc.*, 895 F. Supp. 2d 1268, 1271 (S.D. Fla. 2012) (finding that interpreter costs are statutorily authorized under 28 U.S.C. § 1920); *Zambrano v. Dom & Dom Pizza, Inc.*, No. 11-20207-CIV, 2012 WL 2921513, at *2 (S.D. Fla. July 17, 2012) (finding that $180.00 fee for use of interpreter at trial was reasonable and recoverable under § 1920).

There are two final costs to be addressed.  First, Ms. Sanchez seeks $800.00 for her share of the mediator's fee from the June 7, 2018 mediation.  (Docs. 28-29, 79, at 4).  Ms. Sanchez has attached the invoice from the mediator in support of this requested cost.  (Doc. 79-11, at 5-7).  However, mediator fees are not recoverable under § 1920.  *See, e.g.*, *Nicholas v. Allianceone Receivables Mgmt., Inc.*, 450 F. App'x 887, 888 (11th Cir. 2012) (affirming district court's denial of mediation fees under § 1920); *Rizzo-Alderson*, 2019 WL 3324298, at *5 (denying mediation costs in FLSA case as not recoverable under § 1920); *Van Voorhis v. Hillsborough Bd. of Cty. Comm'rs*, Case No. 8:06-cv-1171-T-TBM, 2008 WL 2790244, at *4 (M.D. Fla. July 18, 2008) ("Despite the fact that mediation is often court ordered, § 1920 does not contemplate the costs of mediation. Of the circuits that have squarely addressed whether mediation costs may be taxable under § 1920, all have held that they are not.").  Accordingly, I will recommend that the request for $800.00 in mediation costs be denied.

Last, Ms. Sanchez seeks recovery of $3,750.00 in expert witness fees for her attorney's fees expert, Ms. Trent.  (Doc. 79, at 5).  This request is supported by Ms. Trent's affidavit, in which she avers that "Plaintiff's counsel and I have agreed that I would be compensated for my work on this matter at the rate of $375.00 per hour.  I have spent (ten) 10 hours reviewing and analyzing this matter as of the time of executing this affidavit for a total expert witness fee of $3,750.00."  (Doc. 80-1, ¶ 29).  Other than stating that "all taxable costs" are stated and itemized, Ms. Sanchez gives no further support or legal authority for the expert witness fee.  (Doc. 79, at 17).

Section § 1920(6) only authorizes recovery for "compensation of court appointed experts."  In this case, Ms. Sanchez chose to hire her fees expert; there is no court order appointing Ms. Trent as an expert in this case.  Accordingly, this fee is not recoverable under § 1920, and I will recommend that Ms. Sanchez's request for the $3,750.00 expert witness fee be denied.  *See*

*Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) ("[C]osts such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees, [are] nonrecoverable."); *Gortat v. Capala Bros., Inc.*, 795 F.3d 292, 296-97 (2d Cir. 2015) ("Because 29 U.S.C. § 216(b) of the FLSA does not explicitly authorize courts to award reimbursement for expert fees, it does not permit a court to award such fees beyond the allowances recoverable pursuant to 28 U.S.C. § 1920 as limited to 28 U.S.C. § 1821."); *Moore v. Appliance Direct, Inc.*, No. 6:08-cv-317-Orl-19DAB, 2009 WL 909271, at *4 (M.D. Fla. Apr. 1, 2009) (denying recovery of $630.00 for an attorney's fee expert who reviewed the case and prepared an expert witness affidavit because "[n]either 29 U.S.C. § 216(b) [n]or 28 U.S.C. § 1920 provide a basis for Plaintiffs to recover fees paid to non-testifying expert witnesses." (citing *Glenn*, 841 F.2d at 1575; *Tang How v. Edward J. Gerrits, Inc.*, 756 F. Supp. 1540, 1546 (S.D. Fla. 1991))).

In summary, I will recommend that Ms. Sanchez's request for mediator costs ($800.00) and for expert witness fee ($3,750.00) be subtracted from her original total amount of $6,637.64, and I will recommend that Ms. Sanchez instead be awarded costs in the reduced amount of $2,087.64.

## IV.    CONCLUSION

Accordingly, upon due consideration, **I RESPECTFULLY RECOMMEND** that Plaintiff's Motion for Attorney's Fees and Costs (Doc. 79) be **GRANTED IN PART AND DENIED IN PART**.   I further recommend that Ms. Sanchez be awarded a total of $80,587.50 in fees and $2,087.64 in costs, and that judgment be entered in Ms. Sanchez's favor and against the Defendants, jointly and severally in these amounts.   In all other respects, the motion should be denied.[23]

---

[23] Ms. Sanchez requests that any judgment entered also include the $10,000 Offers of Judgment.   (Doc. 79, at 1, 21).   I respectfully recommend that this request by denied, as judgment was already entered in Ms. Sanchez's favor on November 20, 2019.   (Doc. 78).

Plaintiff's Opposed Motion to Strike Defendants' Untimely Opposition to Plaintiff's Motion for Attorney's Fees and Costs (Doc. 82) is **DENIED**.

### <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 17, 2020.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record