# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TANIA SANCHEZ,**

                  **Plaintiff,**

**v.**                                                         **Case No:   6:17-cv-1752-Orl-22LRH**

**M&F, LLC, MAFA USA, INC., FABIAN
BERRU and MARIA PAREDES,**

                  **Defendants.**

---

## ORDER

This cause is before the Court on Plaintiff's Motion for Attorney's Fees and Costs (Doc. 79) filed on December 3, 2019, following entry of the final judgment on her Fair Labor Standards Act claims based on Defendants' offers of judgment totaling $10,000. (Docs. 68, 78).

On June 17, 2020, the United States Magistrate Judge entered a report recommending that the Motion for Attorney Fees and Costs be granted in part and denied in part, and Plaintiff be awarded attorney's fees of $80,587.50 and $2,087.64 in costs. (Doc. 84). Defendants filed their Objection to the Report and Recommendation on July 1, 2020, arguing that their offers of judgment to Plaintiff included an amount for attorney's fees and costs, and she is not entitled to more fees because she prolonged the litigation. (Doc. 85). Plaintiff filed her Response to Defendants' Objection on July 15, 2020, arguing she is entitled to her fees and costs incurred, which were not included in Defendants' offers of judgment. (Doc. 86).

After an independent *de novo* review of the record in this matter, including Defendants' Objection and Plaintiff's Response, the Court finds for the reasons set forth below that Plaintiff's Motion for Attorney Fees (Doc. 79) is due to be granted in part and denied in part.

## I.      BACKGROUND FACTS

On October 10, 2017, Plaintiff Tania Sanchez filed suit against her former employers, Defendants M&F, LLC ("M&F"), MAFA USA, Inc. ("MAFA"), and the once-married owners, Fabian Berru and Maria Paredes, alleging claims for violation of the overtime and minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") (Count I, II), as well as claims for breach of contract, misappropriation of likeness, and retaliation under the Florida Whistleblower Act (Count III, V, and VI). Shortly after suit was filed, the Court declined to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over these state law claims and they were dismissed without prejudice to refiling in state court. (Doc. 17).

Between January 2018 and September 2019, the parties conducted discovery concerning the two FLSA claims and Plaintiff's additional claim for "IRS fraud" under 26 U.S.C. § 7434 (Count IV). In conducting discovery, Plaintiff filed her responses and amended responses to the Court's Interrogatories (Docs. 19, 22); the parties also conducted several depositions; Plaintiff and the individual Defendants each filed several declarations and affidavits; and the parties exchanged written discovery. As the Magistrate Judge correctly noted, "the vast majority of the discovery related solely to Ms. Sanchez's FLSA claims." (Doc. 84 at 3-4).

Following the close of discovery and the timely filing of Plaintiff's Motion for Summary Judgment on May 13, 2019, the claims in this case appeared to be focused exclusively on Plaintiff's FLSA claims. Even in the parties' summary judgment briefing, virtually none of Defendants' efforts were devoted to discussion of the IRS fraud claim. (*See* Doc. 84 at 16 (pointing out that the Defendants gave the IRS fraud claim "such short shrift as to only include a one-sentence argument in their motion for summary judgment")). On October 9, 2018, Defendants filed their Motion for Summary Judgment focusing on the FLSA overtime claim; a single sentence was focused on the claim of IRS fraud. (Doc. 33).

Plaintiff responded on November 8, 2018 (Doc. 34), and the Magistrate Judge, in a lengthy and thorough Report and Recommendation, recommended denial of summary judgment on December 7, 2018. (Doc. 37). Defendants filed no objections to the Report and Recommendation, and the Court denied summary judgment on January 3, 2019. (Doc. 38). Following completion of discovery, on May 13, 2019, Plaintiff filed a motion for summary judgment on her two FLSA claims supported by affidavits, depositions, and responses to written discovery (Docs. 41 & 41-1 to 41-16), which Defendants opposed. (Doc. 47); Plaintiff filed a reply with supporting evidence. (Docs. 50; 50-1 to 50-11).

Although Plaintiff also sought summary judgment on the IRS fraud claim in the tail end of the 24-page motion, Defendants did not address the claim at all in their Response. However, because the Court remained in doubt as to whether it had subject matter jurisdiction over the IRS fraud claim, given decisions from the Middle District calling jurisdiction into doubt, on July 11, 2019, the Court entered an Order to Show Cause to Plaintiff why the IRS fraud claim should not be dismissed for lack of jurisdiction. (Doc. 53). The Court also ordered Defendants to show cause why they should not be considered "joint employers" and, thus, jointly and severally liable to Plaintiff if found liable for the violations of the FLSA. (*Id.*).

Following the parties' responses, (Docs. 57 & 58), the Court dismissed Plaintiff's IRS fraud claim for want of jurisdiction for lack of subject matter jurisdiction on August 27, 2019. (Doc. 59). The Court also held that Defendants M&F and MAFA—allegedly unrelated companies owned separately by the ex-spouses, Fabian Berru and Maria Paredes, and managed by their daughter (Mary Berru)—"were joint employers within the meaning of the FLSA, 29 C.F.R. § 791.2(a)" based on overlapping ownership history, shared headquarters/worksite location, shared employer vehicles, shared cleaning supplies, operating the same type of business, and tax return representations. (Doc. 59 at 10-13). In addition, the Court held that the individual Defendants

- 3 -

Fabian Berru and Maria Paredes were Plaintiff's "employers" within the meaning of the FLSA and would be held jointly and severally liable for any FLSA violations. (Doc. 59 at 16). On September 19, 2019, the Court set this case for trial to commence on December 3, 2019. (Doc. 67).

On September 30, 2019, the Defendants filed a Notice of Offer and Acceptance of Offers of Judgment, in which Defendants M&F and Fabian Berru tendered an offer to Ms. Sanchez of $7,000, and Defendants MAFA and Maria Paredes tendered an offer of $3,000, for a total offer of $10,000. (Doc. 68). Plaintiff accepted both offers on September 26, 2019. (Doc. 68). However, because the Offers of Judgment purported to settle FLSA claims, the Magistrate Judge ordered the parties to file a joint notice, pursuant to *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354-55 (11th Cir. 1982), explaining why their settlement was fair and reasonable, as well as whether the settlement included attorney's fees and costs. (Doc. 69). While the parties were able to agree that the settlement was reasonable, they were not able to agree as to whether the settlement included attorney's fees and costs, and therefore both sides provided separate briefing on this issue. (Docs. 73, 74).

On November 13, 2019, the Magistrate Judge issued a Report recommending that the parties' settlement be deemed fair and reasonable, that the Offers of Judgment be deemed exclusive of attorney's fees and costs, and that Plaintiff be permitted to file a separate motion for fees and costs. (Doc. 75). Plaintiff filed a Notice of Non-Objection to Report and Recommendation on November 18, 2019. (Doc. 76). Defendants filed no objection at all. On November 19, 2019, the Court adopted the Report and Recommendation to grant Plaintiff's Motion to Approve Acceptance of Offers of Judgment finding them to be "a fair and reasonable compromise" of a bona fide FLSA dispute. (Doc. 77). The Court also held that Plaintiff was "entitled to an award of reasonable attorney fees and costs under the FLSA, 29 U.S.C. §216(b)," separate and apart from Defendants' offers of judgment. (*Id.*). The parties were directed to confer on the amount of attorney fees and

costs, and in the event they were unable to agree on the amount, Plaintiff was directed to a motion within fourteen days. (*Id.*). On November 20, 2019, the Clerk entered judgment providing that the Plaintiff Tania Sanchez recover the sum of $7,000.00 from Defendants M&F, LLC and Fabian Berru, jointly and severally, and recover an additional the sum of $3,000.00 from Defendants MAFA, USA, Inc. and Maria Paredes, jointly and severally. (Doc. 78).

On December 3, 2019, Plaintiff filed her motion for attorney's fees and costs, seeking a total of $80,775.00 in fees, and $6,637.64 in costs. (Doc. 79). Although Defendants had filed a response, it was untimely by two days and Plaintiff moved to strike it (Doc. 82); the Magistrate Judge denied the motion. (Doc. 84). Defendants asserted various arguments in response to Plaintiff's Motion seeking attorney's fees, challenging the number of attorney hours, but not contesting the hourly rates for the attorney work or paralegal work performed; they also did not contest Plaintiff's costs. (Doc. 81). In a thorough, thirty-five page Report—noting this straightforward FLSA case had unfortunately devolved into a "protracted, particularly contentious litigation"—the Magistrate Judge recommended that Plaintiff be awarded virtually the full amount of attorney's fees of $80,587.50 (with $187.50 deducted for 0.5 hour of attorney time excluded), and $2,087.64 for only those costs authorized by statute. (*See* Doc. 84 (June 17, 2020)).

On July 1, 2020, Defendants filed their Objection to the Report and Recommendation, in a futile effort to resurrect an argument they had previously waived by not filing an objection (*see* Doc. 77), contending their Offers of Judgment for $10,000 were inclusive of attorney's fees and costs. (Doc. 85). Defendants also argue that Plaintiff is not entitled to her full amount of fees because she prolonged the litigation. (*Id*.). Plaintiff filed her Response to Defendants' Objection on July 15, 2020, arguing she is entitled to virtually all of the attorney's fees incurred as recommended by the Magistrate Judge, and they were not included in Defendants' Offers of Judgment. (Doc. 86). The matter is now ripe for review.

## II. APPLICABLE STANDARDS

*A. Review of the Magistrate Judge's Report and Recommendation*

District courts review *de novo* any portion of a magistrate judge's disposition of a dispositive motion to which a party has properly objected. Fed. R. Civ. P. 72(b)(3); *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 n.3 (11th Cir. 2011) (per curiam). The district judge may reject, modify, or accept in whole or in part the magistrate judge's recommended disposition, among other options. Fed. R. Civ. P. 72(b)(3). *De novo* review of a magistrate judge's findings of fact must be "independent and based upon the record before the court." *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988). The district court "need only satisfy itself that there is no clear error on the face of the record" in order to affirm a portion of the Magistrate Judge's recommendation to which there is no timely objection. Fed. R. Civ. P. 72 advisory committee's note (1983) (citations omitted); *see also, Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993).

*B. Award of Fees under the FLSA*

As the Eleventh Circuit noted in *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dept. of Labor*, 679 F.2d 1350, 1352 (11th Cir.1982), FLSA provisions are mandatory; the "provisions are not subject to negotiation or bargaining between employer and employee." *Id.* Only two ways exist for the settlement or compromise of an employee FLSA claim—a settlement supervised by the Secretary of Labor or "a stipulated judgment entered by a court which has determined that a settlement . . . is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1354. In an action to recover under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff" also "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).   The FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict

of interest taints the amount the wronged employee recovers under a settlement agreement. *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009).

In determining the amount of a reasonable attorney's fee under the FLSA, courts utilize the federal lodestar approach. *See Perez v. Carey Int'l, Inc.*, 373 F. App'x 907, 911 (11th Cir. 2010) (noting that the district court properly conducted a lodestar analysis in determining a reasonable fee under the FLSA). "The starting point in fashioning an award of attorney's fees is to multiply hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Echerhart*, 461 U.S. 424, 433 (1983).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). The fee applicant must produce satisfactory evidence that the requested rate is within the prevailing market rates and support the number of hours worked and the rate sought. *See, e.g., Hensley*, 461 U.S. at 433. In addition, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.

Under the lodestar method, a reasonable hourly rate for an attorney is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id*. at 1299. It is presumed that most or all of the following factors are subsumed in the calculation of the lodestar:   (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the

experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases. *Id.* (citing *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)).

The going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990). The "relevant market" is "the place where the case is filed." *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). To establish that the requested hourly rate is consistent with the prevailing market rate, the fee applicant must "produc[e] satisfactory evidence" that "speak[s] to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299-1300. This requires "more than the affidavit of the attorney performing the work," and generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id.* In addition, the Court may rely on its own knowledge and experience of the prevailing market rate. *See Id.* at 1303. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

### C. *Award of Costs pursuant to 28 U.S.C. § 1920*

The FLSA also authorizes the recovery of costs to a prevailing plaintiff. 29 U.S.C. § 216(b). However, "[t]he costs recoverable by prevailing plaintiffs in FLSA cases under section 216(b) are limited to those costs enumerated in 28 U.S.C. § 1920." *See Glenn v. Gen. Motors Corp*., 841 F.2d 1567, 1575 (11th Cir. 1988)).

In a detailed analysis, the MJ recommended an award of allowable costs of $2,087.64 taxable under 28 U.S.C. § 1920 for the filing and service of process fees and for the court reporter fees for the parties' depositions and the interpreter for Plaintiff. (Doc. 84 at 30-34). Defendants do not object to taxation of costs of $2,087.64 as recommended by the Magistrate Judge. (*See* Doc.

85). The Court has reviewed the submitted costs *de novo*, and there being no objection, costs in the amount of $2,087.64 will be awarded to Plaintiff.

### III.   ANALYSIS

*A.  Attorney's Fees*

*1.  Hourly rates*

Plaintiff seeks an hourly rate of $375 for work of her counsel, Daniel Perez, Esq., and an hourly rate of $150 for paralegal work by Beauvais Rene, Jr. (Doc. 79 at 6). In support of these hourly rates, Plaintiff submitted affidavits from Mr. Perez and Mr. Rene, Mr. Perez's curriculum vitae, and court orders awarding Mr. Perez similar hourly rates. (Docs. 79-1 to 79-9). Plaintiff's expert on attorney's fees, Adrienne E. Trent, Esq., is an experienced employment attorney in the Orlando market who opined that Mr. Perez's requested rate of $375.00 is reasonable and customary for an attorney of similar experience in the Central Florida legal market. (Doc. 80-1).

To establish that the requested hourly rate is reasonable and consistent with the prevailing market rate for similar services by lawyers of reasonably comparable skills, experience, and reputation, the fee applicant must "produc[e] satisfactory evidence" that "speak[s] to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. This requires "more than the affidavit of the attorney performing the work," and generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id*.

The Magistrate Judge recommended an hourly rate of $375 for Plaintiff's counsel, Mr. Perez, and the rate of $150 for his paralegal, Mr. Rene. (Doc. 84 at 11-12). Following entry of the Report and Recommendation, Defendants did not object to the recommended hourly rates. (Doc. 85). Based on the Court's *de novo* review of the record and the affidavits submitted, and the lack of objection by Defendants to the hourly rates recommended by the Magistrate Judge, the Court

finds an hourly rate of $375 for Mr. Perez and $150 his paralegal to be reasonable under the circumstances of this case.

> 2.   *Number of Hours*

Plaintiff seeks a fee award for 206.4 hours of attorney time for Mr. Perez, and 22.50 hours of paralegal time; they have submitted their time records in support of their affidavits. (Doc. 79 at 6; 79-1, 79-10, 79-13). The Magistrate Judge acknowledged that Mr. Perez had properly exercised billing judgment in reducing his hours by 2.7 hours for the dismissed state claims and 8.0 hours for the dismissed IRS fraud claim (to reach the net of 206.4 hours) because the vast majority of the discovery and motions practice centered around Plaintiff's two FLSA claims. Defendants object to the number of hours the Magistrate Judge recommended, arguing that the recommended 206.4 total hours include "excessive, redundant and unnecessary" billed time which should not be reimbursed.

Counsel must provide contemporaneous records to show the time spent on the different claims, and "the general subject matter of the time expenditures ought to be set out with sufficient particularity so the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. The party opposing a fee application must submit objections and proof that are specific and reasonably precise. *Norman*, 836 F.2d at 1301.

Plaintiff provided time records attached to the affidavits of Mr. Perez and his paralegal in support of 206.40 hours of attorney time and 22.50 of paralegal time. (Docs. 79-1, 79-10, 79-13). Plaintiff's fee expert, Ms. Trent, has opined that "all of the tasks undertaken by Plaintiff's counsel, as reflected in [his] time records, were reasonably necessary for the representation of the Plaintiff and for Plaintiff to prevail in this case." (Doc. 80-1 ¶ 23). Ms. Trent further opined that "the amount of time expended by Plaintiff's counsel in the representation of Plaintiff was reasonable and

necessary both on the whole and with respect to the amount of time spent on any particular task undertaken." (*Id.* ¶ 24).

The Magistrate Judge rejected Defendants' general undetailed objections to opposing counsel's time entries but did agree that 0.5 hour of attorney time spent on clerical tasks, such as the handling the summonses, should be excluded. She pointed out, in light of Defendants' lack of specific objections about "unreasonable charges" for "the sake of brevity" in their brief:

> [I]t is not the Court's job to sift through 48 pages of time records with over 250 time entries to determine which time is "otherwise unreasonable" that has not already been addressed in one of the many other challenges the Defendants raised. The Defendants' response is only 12 pages in total – they had an additional eight pages within which to lodge their objections. Moreover, if they felt they would exceed the 20-page limit, they could have sought a page limitation extension. They did not. Therefore, to the extent they advance arguments as to a general category of "unrecoverable time," those arguments are not specific and I recommend that they be denied on that basis.

(Doc. 84 at 29). A fee opponent's failure to explain with specificity the particular hours it views as excessive, redundant, or otherwise unnecessary is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)).

The Magistrate Judge found that, other than the 0.5 hour of reduction in attorney time for clerical work, the hours expended on the case by Plaintiff's counsel, Mr. Perez, and his paralegal were reasonable "particularly given the numerous motions filed, the 25-month duration of the litigation, and the favorable outcome, and that [Plaintiff] has properly supported her requested attorney and paralegal hours with time records and affidavits." (Doc. 84 at 30). Thus, the Magistrate Judge found that when the reasonable hours were multiplied by the reasonable hourly rates, the total of fees equated to $77,212.50 for Attorney Perez and $3,375.00 for Paralegal Rene, for a recommended grand total of $80,587.50 in fees. (*Id.*).

In their Objections to the Report and Recommendation, Defendants essentially argue that the fee award should be reduced because Plaintiff enjoyed only partial success on the merits, *i.e.*, prevailing on only the two FLSA claims out of the eight original counts, and for only one-third of damages (Defendants argue) Plaintiff alleged.[1] Defendants argue that their payroll documents showed that they only owed $2,824 to Plaintiff and "[b]y deliberately demanding unrealistic sums," she "prolonged this litigation in an effort to generate attorney's fees eight (8) times more than the offer[s]" of judgment she accepted. (Doc. 85 at 2). Defendants argue that they were "compelled to undertake considerable time and effort in researching all the issues raised in all counts" originally pleaded. (*Id*.). However, five of the six non-FLSA counts were state claims which were dismissed without prejudice on January 24, 2018 (Doc. 17), shortly after Plaintiff filed suit, a full nine months before Defendants filed their Motion for Summary Judgment (Doc. 33), and fourteen months before the discovery period ended on March 13, 2019 (*see* Doc. 31). The sixth non-FLSA claim, for IRS fraud, was dismissed *sua sponte* by the Court for lack of subject matter jurisdiction (*see* Doc. 59) after Defendants devoted one sentence to it in their Motion for Summary Judgment. Thus, it does not appear that Defendants were actually required to expend more than a minimal amount of "time and effort" researching the state claims because they were dismissed right after the case was filed or the IRS fraud claim which they failed to address. Moreover, as Plaintiff points out, counsel has already deducted 2.7 hours for work on the state law claims and 8.0 hours for time spent on the IRS fraud claim.

In their second objection, Defendants contend Plaintiff's acceptance of the offers of judgment for $10,000, was less than one-third of what Defendants characterize as an "inflated" claim of $35,073.60 for overtime and minimum wages owed ($17,536.80) doubled for liquidated

---

[1] The Magistrate Judge also rejected Defendants' claim that Defendants were the "prevailing parties" on Plaintiff's state claims since the Court declined to exercise supplemental jurisdiction over them and dismissed the state claims without prejudice. (Doc. 84 at 17).

damages. Defendants argue that the amount Plaintiff alleged she was not paid was contradicted by her signed acknowledgment on the payroll records that she had "received the correct amount of wages for her work" and by two of Defendants' witnesses[2] who could allegedly refute her contention the payroll records were inaccurate. (*Id.*). Plaintiff points out that Defendants admittedly did not produce "payroll records" such as a traditional timecard; instead, as Berru testified at his deposition, Defendants' created "Quick Report spreadsheets" based on text messages between Plaintiff and Berru and GPS records of the location of the company vehicle she drove from one site to another to clean. (Doc. 86 at 8 (citing Doc. 41-3 at 29-30)). Berru conceded that the texts messages and GPS locations were temporary and self-erasing; thus, they were not produced in discovery. (*Id.*).

Defendants' final specific objection to the Magistrate Judge's Report is that the attorney's fee award is inconsistent with the purposes of Federal Rule of Civil Procedure 68, governing offers of judgment, which seeks to promote settlements and avoid protracted litigation. They argue that Rule 68 incentivizes parties to "evaluate the risks and costs of litigation and to balance them against the likelihood of success of trial on the merits." (Doc. 85 at 9 (citation omitted)). In this case, Defendants argue, awarding attorney's fees in an amount eight times higher than the amount of the offer accepted "is tantamount to rewarding a plaintiff for deliberately prolonging the litigation" and defeats the intent of Rule 68; "allowing such conduct to stand is tantamount to providing an incentive for FLSA claimants to utilize the statute to punish employers by compelling them to pay sums in excess of what is legitimately owed because of the fear of having to pay excessive attorneys' fees." (*Id.* at 9)

---

[2] Apparently, these fact witnesses were not listed on Defendants' Rule 26 disclosures, or identified during discovery, and Plaintiff moved *in limine* to preclude them from testifying at trial. (*See* Doc. 64).

Plaintiff responds that Rule 68 has worked exactly the way it was intended to work, obviating the need for a multi-day jury trial in this case. (*See* Doc. 86 at 4 (citing *Utility Automation 2000, Inc. v. Choctawhatchee Electric Cooperative, In*c., 298 F.3d 1238 (11th Cir. 2002)(stating that the purpose of Rule 68 is to force the offeree to contemplate resolution in the face of a potential adverse fees and costs award); *Allen v. City of Grovetown*, 681 F. App'x 841, 844 (11th Cir. 2017)(same)). Plaintiff explains that, at the parties' two mediations held in 2018 and 2019, Defendants offered far less to settle and it was only after the conclusion of the second mediation, much closer to trial, that they presented Plaintiff with offers of judgment totaling $10,000 to *her*, exclusive of attorney's fees and costs. (Doc. 86). She argues that if Defendants had presented her with the $10,000 offers of judgment exclusive of attorney's fees at an earlier mediation rather than on the eve of trial, she would have accepted the $10,000 settlement offer "years ago, greatly minimizing the attorney's fees and costs that Defendants object to now." (*Id.*) Plaintiff testified that she accepted the $10,000 offers of judgment "because (1) she needed the wages owed to her now, (2) she wanted to avoid going to a "multi-day trial" and (3) she was willing to accept winning judgments against Defendants to offset the risk of paying defense fees and costs" if she went to trial. (*See* Doc. 73-1 (Sanchez Aff.)).

As an initial matter, Plaintiff stated in her responses to the FLSA interrogatories that her estimated unpaid overtime was approximately $8,400, exclusive of liquidated damages, even though she noted that her paychecks and the payroll records contradicted each other. (Doc. 22-1 ¶ 7). When Plaintiff subsequently filed her Motion for Summary Judgment, in which she again requested unpaid overtime wages of $8,400, she also sought $9,136.80 in unpaid minimum wages for the time allegedly required to gather supplies each workday. (Doc. 81 at 5 (citing Doc. 41 at 2)). In her Motion for Summary Judgment, Plaintiff explained that these amounts were estimated

assumptions because Defendants did not keep proper payroll or time records. (Doc. 41 at 15-17, 21-23).

In this case, Defendant Berru or his adult daughter, Mary Berru, prepared the "time-work" reports, based on the company vehicle's GPS and text messages, which reports were then used as the basis for the amount of Plaintiff's compensation. (Doc. 59 at 11). It is now law of the case that these "payroll records" produced by Defendants in this case were incomplete, inaccurate, and contradicted by the information on the paystubs.[3] (*See* Doc. 38, *adopting without objection from Defendants,* Doc. 37 at 10 n.14 (report and recommendation finding specific examples of discrepancies from Defendants' payroll evidence to be "disturbing and call[ing] into question the accuracy of Defendants' records and Berru's affidavit."). Moreover, Defendants, as employers, bear the burden of accurate record keeping.

Under the FLSA and its implementing regulations, an employer is required to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by [the employer]." 29 U.S.C. § 211(c). Although employees seeking to recover overtime or unpaid wages under the FLSA have the burden of proving that they worked without proper compensation, "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Allen v. Board of Public Educ. for Bibb County,* 495 F.3d 1306, (11th Cir. 2007) (citation omitted). It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment because the employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed and "[e]mployees seldom keep such records themselves." *Id.*

---

[3] *See* Doc. 59 at 15-16.

"[I]f an employer fails to maintain records concerning the employee's wages, hours, and other terms and conditions of employment as required by FLSA and the employee cannot offer convincing substitutes, the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act." *Id.* at 1315-16 (internal citations omitted). In keeping with the Eleventh Circuit precedent discussed in *Allen*, Defendants were responsible for the "incomplete, inaccurate, and contradictory" records leading to issues with Plaintiff's ability to accurately estimate her overtime. (*See* Doc. 22-1 ¶ 5). Her sworn affidavit was also very specific about the issues with the "DRS" records and their incompleteness. (Doc. 73-1 at 3-13 (ten single-spaced pages regarding entries)).

In addition, the settlement amount of $10,000, standing alone, is not an indication that Plaintiff's allegation of overtime and minimum wages owed was overly "inflated" or showed that she "insisted on pursuing excessive compensation" or that she engaged in unnecessary discovery and prolonged the litigation. In Plaintiff's Affidavit attached to her Motion to Approve the Settlement, she "painstakingly attempted to decipher the Defendants' payroll and time records," resulting in a calculation that she was owed $3,877.50 in unpaid overtime wages, and $2,555.64 in unpaid minimum wages. (*See* Doc. 84 (citing Doc. 73-1 at 2-12)). When an equal amount of liquidated damages is added, the total that Plaintiff claimed was $12,866.28, not the more than $17,000 Defendants' point to, which was a pre-discovery amount. (*Id.*). As Plaintiff explains in her Response, she was relying on estimates based on Defendants' deficient records for her response to the Court Interrogatories to estimate unpaid overtime wages. (Doc. 86 at 6). Once Defendants produced additional Daily Route Schedules Plaintiff revised her estimate of wages owed. (*Id.*).

Therefore, as the Magistrate Judge noted, the $10,000.00 settlement is 77.7% of what she claims she was owed—far from the one-third Defendants argue—and a substantial amount for a single individual's wage claims for 12 months of employment. The final settlement amount does not merit a reduction of counsel's hours under the lodestar analysis.

To the extent that Defendants argue that Plaintiff's contingency fee agreement with her counsel somehow limits the attorney's fees which may be awarded under the FLSA, the caselaw does not support Defendants' argument that the contingency agreement imposes a ceiling on an otherwise reasonable award of attorney's fees. *See, e.g., Moore v. Appliance Direct, Inc.*, No. 6:09-cv-224-Orl-GJK, 2013 WL 12336220, at *6 n.12 (M.D. Fla. Oct. 22, 2013) (rejecting the employer's argument in FLSA case that the attorney's fee award to the employee should be reduced based on contingency fee agreement between the plaintiff and his counsel) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 92-96 (1989)).

Accordingly, the hours as recommended by the Magistrate Judge for attorney time and paralegal time are reasonable at 205.9 hours of attorney time and 22.50 of paralegal time, respectively; when multiplied by the reasonable hourly rates, the Court finds reasonable the total of fees of $77,212.50 for work performed by Attorney Perez and $3,375.00 for work performed by Paralegal Rene, for an overall total of $80,587.50 in fees.

Therefore, it is **ORDERED** as follows:

1. The Report and Recommendation filed June 17, 2020 (Doc. No. 84) is **ADOPTED** and **CONFIRMED** and made a part of this Order. Defendants' Objections to the Report and Recommendation are **OVERRULED**.

2. The Motion for Attorney Fees is hereby **GRANTED in part and DENIED in part.** Plaintiff Tania Sanchez shall recover attorney's fees of $80,587.50 and costs of $2,087.64 from

Defendants M&F, LLC, Fabian Berru, MAFA, USA, Inc., and Maria Paredes, jointly and severally.

       2.      The Clerk is directed to enter judgment accordingly.

       **DONE** and **ORDERED** in Orlando, Florida on August 12, 2020.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties